DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                        )
RICKY THOMAS,                           )
                                        )
        Petitioner,                     )
                                        )
              v.                        )    Case No. 16-cv-30169-TSH
                                        )
COMMONWEALTH OF                         )
MASSACHUSETTS,[1]                       )
                                        )
        Respondent.                     )
_____)

REPORT AND RECOMMENDATION ON
PETITION FOR WRIT OF HABEAS CORPUS

On October 12, 2016, Ricky Thomas ("Petitioner"), who is currently serving a sentence

in a Massachusetts correctional facility and is self-represented in this matter, petitioned this court

for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and

Effective Death Penalty Act of 1996 ("AEDPA").  Petitioner was granted leave to file an

amended petition and did so on November 28, 2016 (Dkt. No. 16) ("the Petition").  Respondent

opposes the Petition (Dkt. No. 34).

At the conclusion of a jury-waived trial, Petitioner was convicted of aggravated rape.  He

was found not guilty of kidnapping and assault with intent to rape.  In the Petition, Petitioner

argues that he was deprived of rights guaranteed by the Sixth and Fourteenth Amendments to the

United States Constitution by: Ground One – the trial judge's denial, without an evidentiary

hearing, of his motion for a new trial based on trial counsel's ineffective assistance in failing to

_____
[1] In Petitioner's Amended Petition, he named Douglas Demoura, Superintendent, as the
respondent (Dkt. No. 16).

1

call a witness who would have impeached the victim; and <u>Ground Two</u> – the trial court's finding that Petitioner was guilty of aggravated rape where, as a matter of law, there were no aggravating circumstances (Dkt. No. 16 at 2, 6, 8).  For the reasons set forth below, I recommend that the Petition be DENIED.

I.    <span style="font-variant:small-caps">Background</span>

A.  <u>Facts</u>

The facts, as found by the Massachusetts Appeals Court ("MAC"), which have not been rebutted by clear and convincing evidence, *see, e.g., Leng v. Gelb*, Civil Action No. 14-cv-10462-ADB, 2016 WL 7428221, at *1 (D. Mass. Dec. 22, 2016), are as follows:

> Before the incident at issue, a friend had introduced the victim to the defendant, whom she knew as "Steve," and the victim agreed to go with him to "hang out, party, chill, [and] smoke" "crack" cocaine.  Their plans for that evening did not materialize.  Several weeks later, the two again met on the street.  The defendant asked the victim if she wanted to pick up where they left off, and also if she minded going to his house in Holyoke.  The victim agreed and "jumped in [the defendant's] car."

> The two travelled to an apartment complex "that had two levels, one lower one, and one up a little hill and top level apartments."  The victim had never been there before, but she identified a photograph of a "top left window" as "the window of [the defendant's] room."  On cross-examination, the victim made it clear that she went to the defendant's apartment voluntarily "to party," that is, "smoke, get high and chill."  The two entered the apartment, and the defendant directed the victim down a long, dark hallway to a room at the end of the hall on the left.  The defendant went into a bathroom on the right, and the victim walked into the indicated room.  The room was not furnished, but there were two mattresses on the floor, a television on a stand, and "drug paraphernalia on the floor."

> The victim sat on the corner of one of the mattresses, and she could hear the defendant talking in the bathroom.  She asked if he had said something, but he replied that he was just thinking out loud.  The defendant then walked out of the bathroom, "completely naked."  At that point, the victim had been in the apartment "[a]bout three minutes at the most."  The defendant asked her to take her clothes off and put on a sweater that he took from the closet.  She took off her pants and sweater and shoes, put on the sweater the defendant gave her and sat back down on the bed.

The defendant sat next to her with his legs around her, and when she turned to look at him, "he just grabbed [her] real quick on [her] neck and started choking [her]." She could not breathe and "everything was turning black." Struggling to speak, she told him to let her go, that she would do anything, and that he did not have to do that. Eventually, the defendant released her. She was shocked and shaking uncontrollably because she had been "attacked . . . out of nowhere." She asked him repeatedly why he had done that to her and he said, "I want you to suck my penis." He said that "[she] was going to suck his penis the whole night, that he was going to freak the fuck out of [her] until the next day."

The defendant grabbed the victim's head and started pushing her, "shoving" her to perform oral sex on him. She pulled her head back and said that she needed some water, but he grabbed her head with both hands and forced his penis into her mouth "more than once." She was afraid for her life, and "the second time, when he yanked [her] head back," she said, "[W]e know the same people" and started naming names, "just to get him on another level to break through that, finally like actually like getting some time for this man not to hurt [her]."

When she asked for water a second time, he said no, and demanded oral sex for "three more minutes." However, after a short period, she told him that she was about to throw up, and he told her he would get the water, "but don't you dare move from there."

As soon as the defendant turned his back and walked out of the room, the victim looked around "to find a way out to escape from him." She concluded that the "only way out was the door where he walked through [to the kitchen to get the water] and the window." She "got up, walked toward the window, and opened it." The defendant came back into the room and grabbed her by the sweater and pulled her back. The victim said, "No, you are going to hurt me," and she yanked the sweater off "and . . . fell off the window." In answering the question "[W]hat happened when he was wrestling with you, what happened to you?" the victim responded, "That is when I fell, I jumped out my sweater and I fell . . . out the window" onto the ground below. She identified a photograph of the window in the defendant's apartment as "the window I jumped out the corner of." On cross-examination, the victim clarified, "[I]f I could have jumped, I would have calculated the way I fall, I wouldn't hurt myself that bad. But because he grabbed me, I fell without calculating so I hurt myself even more."

After she fell, the victim lost consciousness, but she remembers that the defendant called from upstairs, saying, "Come back up . . . I am not going to hurt you." Instead, she crawled across the parking lot toward another apartment house and started "ringing every, every, every single doorbell." One man answered his door and called the police.

Holyoke police officer Kristin Shattuck spoke to the victim, who was visibly shaken, upset, and crying, holding the right side of her arm. She had "a contusion

to the top of her right hand, and she also had dried blood coming from the hairline on the right side of her head going down to her temple area." She was wearing only a T-shirt and socks, with no pants, and it was cold, "about 29, 30 degrees that evening." The victim told the officer that the defendant had forced her to perform oral sex.

In the area beneath the defendant's window, the "dirt was . . . freshly disturbed, being winter and everything. And there was dried blood right on the foundation right below the window where if somebody had fallen, they would have hit right on the corner there. . . . There was a bent screen that was right below the window, and that window was the only one in the apartment complex . . . that was missing a screen."

The victim was hospitalized for more than a week. She sustained a concussion, a broken wrist, two broken vertebrae, a broken toe, and a cut on her leg from the screen. Hospital records revealed the presence of cocaine in her system, and she confirmed that she had smoked crack cocaine seven or eight hours before she met the defendant that day. In her opinion, there were no residual effects of the cocaine. "[T]hat is an effect that lasts seconds, not hours." She identified the defendant as the man who had assaulted her from a photographic array on the night of the incident and again, several times, during the trial.

*Commonwealth v. Thomas*, 50 N.E.3d 453, 455-57 (Mass. App. Ct. 2016).

      B. <u>Procedural History</u>

On March 23, 2010, the Grand Jury for Hampden County indicted Petitioner on charges of kidnapping, aggravated rape, and assault with intent to rape (Supplemental Answer ("SA") at 1-2). Petitioner's trial, which was jury-waived, began on March 28, 2012, and concluded on April 2, 2012 (*id.* at 7). While the Commonwealth called 4 witnesses at trial, the victim was the only individual who could testify to the facts of the rape and her escape. The outcome of the trial therefore turned on the credibility of her story. The presiding judge found Petitioner guilty of aggravated rape and acquitted him on the charges of kidnapping and assault with intent to rape (*id.*). The judge sentenced Petitioner to not more than 9 and not less than 6 years, to be served in state prison (*id.*). Petitioner timely filed a notice of appeal (*id.*).

On July 30, 2014, the MAC stayed its proceedings and authorized Petitioner to file, and the trial court to rule upon, a motion by Petitioner for a new trial, which motion was filed on September 29, 2014 (*id.* at 8, 118-144).  Petitioner's motion for a new trial asserted the claim that he was denied the effective assistance of counsel by virtue of his trial attorney's failure to present exculpatory evidence in the form of testimony from one James Bradley (*id.* at 118).  He supported his new trial motion with an affidavit from Bradley, in which Bradley attested, insofar as pertinent, that he encountered the victim, to whom he referred by name, in a drug store in the late winter of 2010 – the rape occurred in the evening of January 26, 2010 – and the victim looked like she was in bad shape.  When Bradley asked her what happened, she told him she "robbed a trick."  According to Bradley, he asked the victim whether the trick beat her up, and she said no, it was nothing like that.  She was in his apartment getting high, and when he left the room, she grabbed some things and jumped out the window.  She didn't know how high up she was, and when she climbed out the window, she fell and hurt herself.  Bradley stated that he told Petitioner about this conversation and agreed to speak with Petitioner's lawyer and to testify about his conversation with the victim.  He was brought to the courthouse to testify, he indicated, and did not know why he was never put on the stand (*id.* at 174-75).  Having been asked about the reasons for not calling Bradley as a witness, trial counsel stated in a letter to Petitioner's appellate counsel that he had identified two potential witnesses.  One of them, a Mr. Narcisse, said that the victim had threatened to bring false claims (presumably against Petitioner) if she was not provided with drugs, and she had done so in the past.  Petitioner's trial counsel was told that Bradley could only testify to the fact that he had been given this same information by Narcisse.  Trial counsel did not call Bradley because Bradley had no first-hand information, had a lengthy criminal history, and was in the middle of his own trial in Superior Court.  Trial

counsel indicated that the decision not to call Bradley was made jointly with the Petitioner (*id.* at 181). Petitioner's affidavit, also submitted in support of his new trial motion, attested that he at all times told his trial attorney that Bradley should be called as a witness in his case (*id.* at 183-86).[2]

The Commonwealth filed an opposition to Petitioner's motion for a new trial (*id.* at 8).

On April 2, 2015, the judge who had presided at Petitioner's jury-waived trial denied his new trial motion without an evidentiary hearing (*id.* at 275-285). She concluded that no evidentiary hearing was necessary "because even if [she] credit[ed] Bradley's affidavit as to what his testimony would have been, trial counsel did not provide ineffective assistance by failing to call him as a witness." The motion, therefore, did not raise a substantial issue warranting a hearing (*id.* at 279).

The trial judge analyzed the Petitioner's ineffective assistance claim under the Sixth Amendment to the United States Constitution and art. 12 of the Massachusetts Constitution. She held that trial counsel's decision not to call Bradley was not manifestly unreasonable because testimony from him about what the victim had allegedly said could not come in for its truth but only as impeachment evidence in the form of a prior inconsistent statement of the victim. Trial counsel impeached the witness through a thorough cross-examination, highlighting inconsistencies and generally implausible statements in her testimony and a significant discrepancy in her timeline (*id.* at 281-82). The trial judge pointed out that, had Bradley been called, the Commonwealth would have impeached him with his prior convictions and examined him based on inconsistencies between his version of events and the evidence. The police did not

---

[2] The trial judge did not credit Petitioner's claim that he disagreed with his trial attorney's decision not to call Bradley to the stand (SA at 280).

find any goods stolen from Petitioner's apartment when they responded to the call about the victim, and Petitioner did not say that the victim stole anything from him in his statement to the police, which was introduced into evidence.  "Moreover, Bradley's testimony would not have been plausible because the victim jumped out of the window in January, almost naked" (*id.* at 282).

In Petitioner's direct appeal to the MAC, he argued, *inter alia*, that, while the evidence might have been sufficient to sustain a conviction for simple rape, the Commonwealth failed to prove any circumstances that would support a conviction for aggravated rape,[3] and that the judge erred by failing to hold a hearing on, and by denying, his motion for a new trial.  *Id.* at 459-461. As to the first issue, relying on *Commonwealth v. McCourt*, 781 N.E.2d 808 (Mass. 2003), the MAC ruled that the Commonwealth proved that Petitioner had committed the rape with acts that resulted in the serious injuries suffered by the victim when she fell out of the window.  The MAC held that Mass. Gen. Laws ch. 265, § 22(a) ("Section 22(a)"), did not, on its face, require

---

[3] Aggravated rape is defined by statute in the Commonwealth of Massachusetts as follows:

> Whoever has sexual intercourse or unnatural sexual intercourse with a person, and compels such person to submit by force and against his will, or compels such person to submit by threat of bodily injury and if either such sexual intercourse or unnatural sexual intercourse results in or is committed with acts resulting in serious bodily injury, or is committed by a joint enterprise, or is committed during the commission or attempted commission of an offense defined in section fifteen A, fifteen B, seventeen, nineteen or twenty-six of this chapter, section fourteen, fifteen, sixteen, seventeen or eighteen of chapter two hundred and sixty-six or section ten of chapter two hundred and sixty-nine shall be punished by imprisonment in the state prison for life or for any term of years.

Mass. Gen. Laws ch. 265, §22.  The criminal offenses incorporated by reference into Section 22(a) include assault and battery with a dangerous weapon, robbery (armed or unarmed), kidnapping, burglary (armed or unarmed), breaking and entering at night, and carrying dangerous weapons.  *See Butler v. O'Brien*, 663 F.3d 514, 524 n.6 (1st Cir. 2011) (Torruella, J., dissenting) (majority held that Section 22(a)'s reference to "serious bodily injury" was not void for vagueness as applied to the petitioner's conduct).

that an act or acts that resulted in serious bodily injury to the victim precede the rape or be inflicted to overcome resistance from the victim.  The MAC reasoned that the victim's injuries were caused when Petitioner grabbed her as she tried to escape, thereby precipitating an awkward fall during which she could not protect herself.  The serious injuries she suffered in the fall constituted the serious bodily injuries that warranted Petitioner's conviction for aggravated rape.  *See Thomas*, 50 N.E.3d at 459.

The MAC also affirmed the trial judge's denial of Plaintiff's new trial motion, stating that the relevant statutory provision encourages resolution of such motions on the papers when no substantial issue is raised.  Noting that it is very difficult to establish ineffective assistance of counsel based on an alleged failure to impeach a witness by a particular method, the MAC held that the trial judge did not abuse her discretion in determining that the motion failed to raise a substantial issue requiring a hearing, or in denying the motion itself.  *Id.* at 461.  The MAC affirmed Petitioner's conviction and the denial of his motion for a new trial.  *See Thomas*, 50 N.E.3d at 461.

After allowing Petitioner's motion for leave to file his application late, the Massachusetts Supreme Judicial Court denied Petitioner's application for further appellate review (SA at 320).

II.     DISCUSSION

A.   Standard of Review

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the . . . AEDPA."  *Harrington v. Richter*, 562 U.S. 86, 97 (2011).  "A habeas petitioner must meet certain preliminary criteria before [a court] can reach the merits of his claim."  *McCambridge v. Hall*, 303 F.3d 24, 34 (1st Cir. 2002).  "He must have fairly presented his claims to the state courts and must have

exhausted his state court remedies." *Id.* (citing 28 U.S.C. § 2254(b)(1)(A)). "Further, if the state decision rests on the adequate and independent state law ground of procedural default, then federal habeas review is unavailable absent a showing of cause and prejudice, or a showing that a miscarriage of justice will otherwise result." *Id.* (citing *Strickler v. Greene*, 527 U.S. 263, 282 (1999); *Gunter v. Maloney*, 291 F.3d 74, 78 (1st Cir. 2002); *Burks v. Dubois*, 55 F.3d 712, 716 (1st Cir. 1995)).

If these threshold criteria are met, the level of review to which a petitioner is entitled depends on whether or not his claims were "adjudicated on the merits in State court proceedings." 28 U.S.C. § 2254(d). "A matter is 'adjudicated on the merits' if there is a 'decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground.'" *Junta v. Thompson*, 615 F.3d 67, 72 (1st Cir. 2010) (quoting *Teti v. Bender*, 507 F.3d 50, 56 (1st Cir. 2007)). "'[A] state court decision that does not address the federal claim on the merits falls beyond the ambit of the AEDPA,' *Clements v. Clarke*, 592 F.3d 45, 52 (1st Cir. 2010), and the habeas court reviews such a claim *de novo*." *Junta*, 615 F.3d at 71 (citing *Fortini v. Murphy*, 257 F.3d 39, 47 (1st Cir. 2001)). In contrast, if the state court has "adjudicated [the claim] on the merits," a federal habeas court may not grant relief unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). *See also Junta*, 615 F.3d at 71. A legal principle is "clearly established" within the meaning of subparagraph (d)(1) "only when it is embodied in a holding of th[e]

9

[Supreme] Court." *Thaler v. Haynes*, 559 U.S. 43, 47 (2010) (citing *Carey v. Musladin*, 549 U.S. 70, 74 (2006); *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington*, 562 U.S. at 102-03 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)). Authority to issue the writ is limited to "cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with th[e] [Supreme] Court's precedents." *Id*. at 102. Further, in conducting its review, the federal habeas court must presume correct the factual determinations made by state courts, unless the habeas petitioner can meet "the burden of rebutting the presumption of correctness by clear and convincing evidence." *See* 28 U.S.C. § 2254(e)(1); *see also Clements*, 592 F.3d at 47. Section 2254(e)(1)'s "'presumption of correctness is equally applicable when a state appellate court, as opposed to a state trial court, makes the finding of fact.'" *Teti*, 507 F.3d at 58 (quoting *Norton v. Spencer*, 351 F.3d 1, 6 (1st Cir. 2003)). With these principles in mind, the court turns to Petitioner's claims.

    B.  <u>Petitioner's Claims</u>

        1.  <u>Ground One – Ineffective Assistance of Counsel</u>

Petitioner presented his ineffective assistance of counsel claim and exhausted his state court remedies as required by 28 U.S.C. § 2254(b)(1)(A). Because the MAC squarely addressed Petitioner's ineffective assistance of counsel claim on the merits, the deferential § 2254 standards of review apply. *See Richter*, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claims on the merits in the absence of any indication or state-law procedural principles to the contrary.").

The applicable precedent in this case is the well-known and clearly established two-prong standard articulated in *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  The MAC did not explicitly address the standard of review it was applying for purposes of ruling on the claims of error in the denial of Petitioner's new trial motion.  *See Thomas*, 50 N.E.3d at 460-61.  The trial court, however, evaluated the claim employing the standard set forth in *Commonwealth v. Saferian*, 315 N.E.2d 878 (Mass. 1974), observing that, if the *Saferian* standard was met, the *Strickland* test was necessarily met as well (SA at 218).  The trial judge was correct:  the First Circuit has held that "'for habeas purposes, *Saferian* is a functional equivalent of *Strickland*.'" *Malone v. Clark*, 536 F.3d 54, 63 (1st Cir. 2008) (quoting *Ouber v. Guarino*, 293 F.3d 19, 32 (1st Cir. 2002)).

Thus, the question before this court is whether the state court applied the *Strickland/Saferian* principles to the facts of Petitioner's case in an objectively unreasonable manner.  *See id.; see also Richter*, 562 U.S. at 101 ("The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable.").  "This is different from asking whether defense counsel's performance fell below *Strickland's* standard.  . . .  A state court must be granted deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself."  *Richter*, 562 U.S. at 101.  Under *Strickland*, to show that he was entitled to relief, Petitioner had to show that his trial attorney provided deficient assistance and that he suffered prejudice as a result of this deficient performance.  *See id.* at 104.  The state trial court considered each of these issues and ruled against Petitioner, and the MAC affirmed the trial court's rulings.  To show that he is entitled to habeas relief, Petitioner is required to show that "the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing

11

law beyond any possibility for fairminded disagreement." *Id.* at 103.  He has not satisfied this very demanding standard.

As an initial matter, Petitioner claims that the trial judge abused her discretion in denying Petitioner's motion for a new trial without holding an evidentiary hearing (Dkt. No. 16 at 4, 6). Massachusetts Rule of Criminal Procedure 30(c)(3) provides, in pertinent part, that a "judge may rule on the issue or issues presented by such motion [for a new trial] on the basis of the facts alleged in the [supporting] affidavits without further hearing if no substantial issue is raised by the motion or affidavits."  To the extent Petitioner asserts that the trial judge violated Massachusetts law when she declined to hold a hearing on his motion for a new trial because his motion raised a substantial issue, this court cannot grant relief on such a claim because "it is not the province of this court to re-examine a state court's compliance with state law." *Arnaut v. Roden*, Civil Action No. 09-10101-RGS, 2009 WL 6337948, at *5 (D. Mass. Oct. 26, 2009), Report and Recommendation adopted, 2009 WL 6337881 (D. Mass. Nov. 25, 2009) (citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Rivera v. Russo*, Case No. 06-12248-DPW, 2008 WL 1702334, at *3 (D. Mass. Mar. 31, 2008)).  Whether the trial judge complied with state law in denying Petitioner a hearing on his new trial motion – and the MAC ruled that the trial judge did so – "is not subject to federal habeas review." *Arnaut*, 2009 WL 6337948, at *5 (citing additional cases).[4]

---

[4] Plaintiff's petition does not assert a constitutional due process violation in the denial of his motion for a new trial without a hearing (Dkt. No. 16 at 6).  Any such claim would, in any event, fail.  A state court does not deny a defendant his federal constitutional right to due process by denying a motion for a new trial without an evidentiary hearing. *See Garuti v. Roden*, 733 F.3d 18, 24-25 (1st Cir. 2013) (Massachusetts Rule of Criminal Procedure 30(c)(3) was not facially unconstitutional, nor was it unconstitutional as applied); *Arnaut*, 2009 WL 6337948, at *6 (same; citing cases); *Dias v. Maloney*, 156 F. Supp. 2d 104, 137 (D. Mass. 2001) (declining to "disturb the state court's procedure").

Turning to the substance of Petitioner's challenge to the denial of his motion for a new trial, in ruling on that motion, the state trial court held that counsel's decision to refrain from calling Bradley to the stand was a reasonable tactical decision that did not fall below the standard required of constitutionally competent counsel (SA at 219-222).  The standard of review applied to such decisions, and the record, justify this ruling.  Assuming that Bradley would have testified consistently with his affidavit, the trial judge noted as a matter of state evidentiary law that Bradley's testimony could only have served to impeach the victim (*id.* at 219-220).  *See Thomas*, 50 N.E.2d at 461.  The MAC agreed with the trial court that trial counsel "thoroughly cross-examined the victim and impeached her with her own inconsistencies," and that further impeachment in the form of an alleged prior inconsistent statement from the victim would have been merely cumulative.  *Id.*  The record supports these conclusions.  Trial counsel's cross-examination of the victim comprised some 100 pages of trial transcript (Tr. I at 70-109; Tr. II at 4-73) and was an extended exercise in impeachment.[5]  He elicited testimony about the victim's drug use, a topic on which she appeared untruthful (Tr. I at 90-93; 99-100; Tr. II at 13, 58); the circumstances in which she met Petitioner and her willingness to "party" with him after a very short acquaintance in exchange for crack cocaine (Tr. I at 74-93; 104-05; Tr. II at 15-19); a significant discrepancy in her timeline of events;[6] and numerous inconsistencies between what

---

[5] The Respondent has submitted four volumes of trial transcript, which are referenced herein as "Tr. I"; "Tr. II"; and "Tr. III."  The fourth volume of the trial transcript was the sentencing.

[6] In summary, the victim testified that Petitioner picked her up at around 8:30 or 9:00 p.m. (Tr. I at 105-06), that they got to his apartment around 9:00 or 9:30 p.m. (Tr. II at 11), that Petitioner was naked in the bedroom with her within three minutes of their entry into the apartment (Tr. II at 21); that she had taken some of her clothes off by around 9:05 or 9:30 p.m. (Tr. II 44), that he attacked her immediately thereafter (Tr. II at 45); and that she was forced to perform oral sex on him for some ten to fifteen minutes before he left the bedroom to get her a glass of water, and, within minutes thereafter, she jumped/fell out of the window (Tr. II at 48).  According to the victim's trial testimony, she would have fallen out of the window around 9:30 or, at the latest,

she said on the witness stand and her earlier statements to police officers (Tr. II at 22-40).  In

closing, trial counsel argued cogently, if ultimately unsuccessfully, that, in view of the absence

of supporting forensic evidence, the many inconsistencies and general lack of truthfulness in the

victim's testimony gave rise to reasonable doubt as to all of the charges against Petitioner (Tr. III

at 56-67).  Where trial counsel had and followed a number of paths towards impeachment of the

victim, "the petitioner cannot overcome the presumption that counsel's decision not to call th[is]

witness[] might be considered sound trial strategy." *Gonzalez-Gonzalez v. U.S.*, 49 Fed. Appx.

322, 325 (1st Cir. 2002) (unpublished) (an attorney's decision to call or bypass an impeachment

witness is peculiarly a matter of strategy rarely second guessed by a court).

The state court further noted that had Bradley testified consistently with the contents of

his affidavit, his testimony would have been implausible because no stolen goods were found on

the victim or in the vicinity of her fall from the window and the statement offered no adequate

explanation for why the victim leapt out of a window, almost naked, in January.  (In terms of the

plausibility of Bradley's anticipated testimony, the state court might also have considered why

the victim would have volunteered a statement against penal interest in which she painted her

actions in a very unflattering light and the absence of evidence confirming that she had gotten

high in Petitioner's apartment before going out the window.)  For this additional reason, trial

counsel's decision not to call Bradley, who was himself subject to impeachment by criminal

conduct, was a reasonable tactical choice.  *See Malone*, 536 F.3d at 65 (trial counsel was not

ineffective when he impeached victim by cross-examining her rather than calling a police officer

who could have been examined on inconsistencies in the victim's testimony and prior statements

---

10:00 p.m.  The victim told the police that she fell to the ground around 11:00 p.m. (Tr. II at 51).
The police were not called to the scene until after midnight (*id.*).

about sexual abuse); *Jenkins v. Bergeron*, 67 F. Supp. 3d 472, 479 (D. Mass. 2014) (declining to second guess state court's conclusion that trial counsel adequately impeached witnesses and that further impeachment would have been mere surplusage); *cf. Vinton v. Nolan*, No. Civ. A. 04-10209-DPW, 2005 WL 562760, at *18 (D. Mass. Mar. 8, 2005) (even an error in judgment in failing to call an impeachment witness did not constitute ineffective assistance of counsel warranting habeas relief).

In his amended petition, Petitioner raises a closely related contention that the lack of testimony from Bradley deprived him of an available substantial ground of defense (Dkt. No. 16 at 6). Petitioner's brief filed with the MAC can be read to raise this contention because appellate counsel argued that Bradley's testimony would have shown that Petitioner did not commit any crime at all (SA at 52). While the MAC did not address this contention directly, it affirmed the trial judge's ruling that Bradley's testimony could not have been introduced to show that no crime had been committed because, under state law, any statement allegedly made by the victim about which Bradley testified could not have been considered for its truth. *See Thomas*, 50 N.E.3d at 461. Thus, Bradley's testimony would not have been direct evidence that Petitioner did not commit a crime. The case of *Commonwealth v. Hill*, 739 N.E.2d 670, 680-82 (Mass. 2000), on which Petitioner relied in his appellate brief, did not support his point because the *Hill* case involved a percipient witness, which Bradley was not. Bradley could, at most, have testified to an alleged prior inconsistent statement by the victim about what had occurred on January 26, 2010 when she went to Petitioner's apartment. But whether the victim was credible and was telling the truth about those events on the stand was challenged at trial by cross-examination and defense counsel's argument that the victim was not believable. Bradley was not, for example, an alibi witness or someone who could have provided evidence of mistaken

identity, nor was he a percipient witness who could have testified that he watched the interaction between Petitioner and the victim and witnessed events different from those testified to by the victim. *Contrast, e.g., Commonwealth v. Lane*, 970 N.E.2d 284, 291 (Mass. 2012) (affirming trial judge's order allowing a motion for a new trial based on ineffective assistance of counsel where the trial attorney failed to call a witness to a shooting who would have testified to a description of the shooter that did not match the defendant's appearance and who contradicted the testimony of the Commonwealth's witness about what had occurred); *Hill*, 739 N.E.2d at 680-82.

The state court further found that Petitioner did not satisfy the *Strickland/Saferian* standard because Petitioner had to show prejudice and there was no reasonable probability that introduction of Bradley's testimony would have produced a different result at trial (SA at 224). As the Respondent points out, in this jury-waived proceeding, the trial judge was the finder of fact. She was well-positioned to evaluate whether impeachment evidence from Bradley would have affected her evaluation of the victim's credibility to the point of possibly changing the outcome of the trial. She found that, in light of the weaknesses of Bradley's anticipated testimony, its introduction into evidence "would not have impacted [her] ultimate findings" (*id.*). This aspect of the state court decision is not "an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. The MAC could reasonably conclude that Petitioner failed to establish prejudice resulting from the alleged ineffectiveness of his trial attorney.

Because Petitioner "has not carried his burden to show that the [MAC's] evaluation of his 'failure to impeach' argument was contrary to Supreme Court precedent or that fair-minded

jurists would all find the [MAC's] determination unreasonable," *Jenkins*, 67 F. Supp. 3d at 479, Ground I does not warrant habeas relief.

### 2. Ground Two – Interpretation of Aggravated Rape Statute

In Ground Two, Petitioner submits that his conviction for aggravated rape violated due process of law under the Fourteenth Amendment because he was not found to have committed any of the felonies enumerated in the aggravated rape statute and was "not found to have committed an additional act upon the alleged victim that resulted in serious bodily injury" (Dkt. No. 16 at 8). Petitioner alleges that he presented this claim to the MAC (*id.* at 9). In his appellate brief, Petitioner argued that there was no evidence that the victim sustained her serious injuries as a result of assaultive or injurious conduct on Petitioner's part and that his conviction was, therefore, not supported by proof beyond a reasonable doubt in violation of his constitutional right to due process (SA at 770-72). The MAC treated this contention as raising a question of the proper interpretation of the Massachusetts aggravated rape statute. *See Thomas*, 50 N.E.2d at 459-460.

The MAC agreed with Petitioner that, because the trial judge had acquitted him of kidnapping, she could not have found kidnapping to be the aggravating circumstance which supported the aggravated rape conviction. *See Thomas*, 50 N.E.2d at 459 n.6. Relying on the Massachusetts Supreme Judicial Court's ("SJC") interpretation of Section 22(a) in *Commonwealth v. McCourt*, 781 N.E.2d 808 (Mass. 2003), the MAC affirmed the defendant's aggravated rape conviction on the ground that when, as here, a rape victim sustained serious bodily injury and there was a logical nexus between the rape and the time and place of the serious injuries, the statutory language only required that the rape have been "committed with"

acts by the defendant that resulted in the victim's injuries. *Id.* at 459. The MAC's account of Petitioner's conduct and the victim's resulting injuries was as follows:

> [T]he defendant, having raped the victim once, then threatened her and ordered her to remain where she was so that he could continue to rape her throughout the night. Instead, she attempted to escape through the second-floor window – the only avenue open to her – and, when she did so, the defendant grabbed her, as she described, precipitating a fall that did not permit her to try to protect herself as she dropped to the ground below.

*Id.* Plaintiff testified that Petitioner returned to the bedroom while she was trying to get out of the window. She had opened the window and put her leg and half her body out of the window. Having previously threatened to rape her all night, Petitioner grabbed the sweater she was wearing and was trying to pull her back and hold her. As this struggle was going on, she was saying "no." She pulled free from the sweater she had put on, went through the screen and fell out of the widow (Tr. I at 53-54). Had she been able to jump without struggling with Petitioner, she could have controlled her fall and would not have hurt herself that badly (Tr. II at 63). The MAC concluded that the language of Section 22(a), as interpreted by the SJC, supported Petitioner's aggravated rape conviction because the victim sustained her injuries in the course of an ongoing episode in which Petitioner raped her and expressed his intention to continue doing so, and it could reasonably be said that his actions caused her injuries, especially his actions at the window that precipitated her awkward fall. *Id.* at 459-460.

The MAC's decision "rested on state law grounds, i.e., the interpretation of the statute as encompassing" the struggle between Petitioner and the victim as an act by Petitioner resulting in serious bodily injury to the victim of a rape. *Soto v. Ryan*, Civil Action No. 12-12023-RGS, 2014 WL 1056957, at *6 (D. Mass. Mar. 14, 2014). "Federal courts have no power to dictate to state courts rules of statutory construction," *Butler*, 663 F.3d at 519, and the proper construction of a state statute and the elements of a state crime are pure questions of state law. *See*

*Carrington v. Spencer*, Civil Action No. 14-cv-13102-ADB, 2015 WL 3874872, at *5 (D. Mass.
June 23, 2015). Even assuming that the MAC erred in its interpretation of Section 22(a),
"'[f]ederal habeas relief cannot be granted merely because a state court errs in its application of
state law." *Id.* (citing *Sanna v. Dipaolo*, 265 F.3d 1, 11 (1st Cir. 2001)).

      Petitioner's reference to *In re Winship*'s due process requirements does not save his
claim. As another session of this court held,

> Although *Winship* requires each element of a state law crime to be proven beyond
> a reasonable doubt, "[w]hich acts constitute the elements of a state crime is a
> question generally answerable only by the state legislature and state courts . . .
> and is antecedent to the constitutional requirement that the government prove
> those elements beyond a reasonable doubt." *Ponnapula v. Spitzer*, 297 F.3d 172,
> 182 (2d Cir. 2002). Accordingly, courts have dismissed mislabeled *Winship*
> claims, holding that "*Winship* does not invite federal habeas courts to engage in a
> substantive analysis of state statutory terms. Our federal constitution does not
> dictate to the state courts precisely how to interpret their own criminal statute."
> *Id.* (affirming district court's dismissal of habeas petition, and holding that
> petitioner could not invoke *Winship* to transform a state law issue into a federal
> question cognizable in a federal habeas proceeding); *see also Sanna v. Dipaola*,
> 265 F.3d 1, 12 (1st Cir. 2001) (noting that "not . . . every error of state law can be
> transmogrified by artful argument into a constitutional violation").

*Id.* Here, Petitioner's argument was that the MAC impermissibly interpreted the statute to apply
to conduct by which Petitioner did not intend to injure the victim, where prior cases interpreting
Section 22(a) involved defendants who beat their victims in addition to committing rape (SA 69-
71). To the extent Petitioner contends that the MAC misinterpreted state court precedent and the
reach of Section 22(a), Petitioner is not entitled to habeas relief. *See Butler*, 663 F.3d at 519
("Federal courts have no power to dictate to state courts rules of statutory construction or
mandate adoption of the rule of lenity."); *Soto*, 2014 WL 1056957, at *6; *Arnaut*, 2009 WL
6337948, at *4.

      "Even if [P]etitioner overcame this defect, the [due process] claim fails on the merits. De
novo review applies because the [MAC] did not decide the federal claim." *Soto*, 2014 WL

1056957, at *6 (citing *Pike v. Guarino*, 493 F.3d 61, 67 (1st Cir. 2007)).  "Where, as here, [P]etitioner did not exhaust the federal claim, this court may still consider the claim and deny relief."  *Id.* (citing 28 U.S.C. § 2254(b)(2); *Clarke v. Spencer*, 582 F.3d 135, 145 (1st Cir. 2009)).  Ground two alleges that Petitioner's conviction for aggravated rape was in violation of his right to due process because he was "not found to have committed an additional act upon the alleged victim that resulted in serious bodily injury" (Dkt. No. 16 at 8).  The assertion that the facts do not support a violation of the aggravated rape statute presents a sufficiency of the evidence challenge.  *Soto*, 2014 WL 1056957, at *6.  Such a challenge asks "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

The language of Section 22(a) requires only that a rape have been "committed with" acts that resulted in serious bodily injury.  "[T]he language 'committed with,' of course, implies some logical nexus between time and place."  *McCourt*, 781 N.E.2d at 814.  "The critical point [,however,] is not whether the aggravating acts served to compel a victim's submission, but whether the rape victim sustained serious bodily injuries or was subjected to other felonious conduct."  *Id.* at 815.  Here, Petitioner's appellate brief shows that his argument of insufficient evidence depends – impermissibly – on viewing the evidence in a light most favorable to him.  *See, e.g., Magraw v. Roden*, 743 F.3d 1, 4-5 (1st Cir. 2014) (state trial court and federal habeas court review evidence in the light most favorable to the prosecution).  Petitioner argued to the MAC that the victim's serious bodily injuries were not caused by any assaultive or injurious conduct on his part.  Indeed, he contended that the evidence showed that he sought to prevent the victim from falling out of the window (SA at 71).  When the evidence is viewed in the light most

favorable to the prosecution, it shows that, having threatened the victim that he was going to rape her all night long and told her not to move while he went and got water, the Petitioner returned to the bedroom and struggled with her to keep her in his apartment as she balanced precariously on the sill of a second story window, ultimately causing her to fall so awkwardly after she slipped out of the sweater he had hold of that she sustained a concussion, two broken vertebrae, a broken wrist, and other injuries.  While Petitioner may not have punched or kicked the victim, a finder of fact could conclude that the Petitioner engaged in an act upon the victim in connection with the rape, and his intention to continue the rape, that resulted in her serious bodily injuries. Viewing the evidence in the light most favorable to the prosecution, a *Jackson* sufficiency challenge based on a claimed lack of evidence to support the aggravating factor of the crime does not warrant habeas relief.

### 3.  Claim Not Raised in Petition

In Petitioner's Answer to Respondent Via Memorandum (Dkt. No. 33), Petitioner appears to raise a new claim for relief, that being that his constitutional Confrontation Clause rights were violated by the trial judge's ruling, based on the Massachusetts Rape Shield Statute, Mass. Gen. Laws ch. 233, § 21B, that Petitioner would not be permitted to impeach the witness by prior convictions for "prostitution related" offenses (Dkt. No. 33 at 4-7), a claim he raised on direct appeal although not at trial.  *See Thomas*, 50 N.E.2d at 457-58.

> A petition for habeas corpus must "'(1) specify all the grounds for relief available to the petitioner; (2) state the facts supporting each ground; [and] (3) state the relief requested," and must "substantially follow either the form appended to these rules or a form prescribed by a local district-court rule.'"  *Sullivan v. Saba*, No. 10-CV-30194-MAP, 2012 WL 1409530, at *2 (D. Mass. Apr. 20, 2012) (quoting Rules Governing Section 2254 Cases in the United States District Courts, Rule 2(c)-(d)).  Further, "[i]t is the petition for a writ of habeas corpus, not subsequently filed memorandum, which defines the claims for habeas relief."  *Id.* (citation omitted).  Therefore [Petitioner]'s new ground[] for relief [is] barred

because [it was] not included in the Petition, and [it] is presented for the first time in his memorandum.

*Fencher v. Roden*, Civil Action No. 13-11937-RGS, 2015 WL 4111329, at *8 (first two alterations in original).  *See also, e.g., Logan v. Gelb*, 790 F.3d 65, 70 (1st Cir. 2015) (habeas petitioner waived claim by failing to include it in his habeas petition); *Leng*, 2016 WL 7428221, at *4 (petitioner's claim was barred where federal constitutional argument appeared for the first time in memorandum and was omitted from petition); *Lamartine v. Ryan*, 215 F. Supp. 3d 189, 194 (D. Mass. 2016) (same).

Petitioner's Confrontation Clause claim is barred for the additional reason that Petitioner failed to exhaust his state court remedies as to this claim.  Before the MAC, Petitioner claimed that his rights under the Confrontation Clause were violated by the trial judge's ruling precluding examination of the victim about certain prior convictions (SA 36-48).  But, exhaustion in state court requires more.  "It is not enough merely to raise an issue before an intermediate court; one who seeks to invoke the federal habeas power must fairly present – or do his best to present – the issue to the state's highest tribunal."  *Mele v. Fitchburg Dist. Ct.*, 850 F.2d 817, 820 (1st Cir. 1988) (citations omitted).  "In Massachusetts, that standard is met 'by "fairly presenting" a federal claim "within the four corners of the [application for further appellate review to the SJC]."'"  *Fencher*, 2015 WL 4111329, at *8 (quoting *Clements v. Maloney*, 485 F.3d 158, 162 (1st Cir. 2007) (quoting *Mele*, 850 F.2d at 823)).

Petitioner's application for further appellate review filed with the SJC listed only the two grounds for relief that were identified in his habeas petition (Dkt. No. 16 at 6, 8; SA at 332).  The new ground for relief – the trial judge's ruling precluding cross-examination of the victim about certain prior convictions – was not presented to the SJC for consideration.  Accordingly, this claim was not exhausted, and is waived.  *Id.* at *9.

III.   RECOMMENDATION

For the foregoing reasons, I recommend that the Court DENY Petitioner Ricky Thomas's

Petition for Writ of Habeas Corpus.[7]

/s/ Katherine A. Robertson
KATHERINE A. ROBERTSON
United States Magistrate Judge

DATED:  November 13, 2017

---

[7] The parties are advised that under the provisions of Fed. R. Civ. P. 72(b) or Fed. R. Crim. P. 59(b), any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court within fourteen (14) days of the party's receipt of this Report and Recommendation.  The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection.  The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation.  *See Keating v. Sec'y of Health & Human Servs.*, 848 F.2d 271, 275 (1st Cir. 1988); *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-79 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir. 1980).  *See also Thomas v. Arn*, 474 U.S. 140, 154-55 (1985).  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.